Good morning, Illinois Appellate Court, 1st District, 3rd Division is now in session. The Honorable Justice Nathaniel House is now presiding. Case number, I'm sorry, case number 19-16-95, People v. Ronald Bow. Good morning, ladies and gentlemen. My name is Nathaniel House. I'm a judge of the Appellate Court and presiding over this case with me are Justices Margaret McBride and Eileen Burke. This case is being heard via Zoom due to the COVID crisis, and we're going to proceed as follows today. We're going to allow each side to have 10 minutes of uninterrupted presentation. In turn, beginning with the appellant. After each party gives their 10 minute presentation, the judges will be allowed to ask questions of the party. The appellant may reserve a couple minutes of rebuttal. I will let the parties know about two minutes when they have about two minutes left to go in their time. We want to thank the participants today who volunteered in the 7-Eleven program, a very valuable program. We appreciate your participation and the court and the justice system appreciates it. Does anyone have any questions about how we're going to proceed today? Okay. Who are the parties who are going to argue for the, who are the attorneys who are going to argue for the parties today, or the 7-Elevens? Beginning with the appellant. 7-Eleven, Mary Catherine Ballew. And you represent the defendant? Yes, Your Honor. Okay. And who represents the state? Your Honor, for the people of the state of Illinois, David Greenspan. Unfortunately, the Ms. Foreman, Delaney Foreman, our 7-Eleven was deployed by Army JAG to South Korea a few months ago, so I am standing in on her behalf. All right. Very well. Thank you. We have one other individual observer. Yes, good morning, Your Honors. Sorry. Gilbert Lenz from the DePaul Legal Clinic. You're representing Ronald B. as well. Okay, very well then. All right. You may now begin your presentation, Ms. Ballew. You have 10 minutes. I'll let you know when you have two minutes left. May it please the court. Good morning, Your Honors and counsel. My name is Mary Catherine Ballew from DePaul's Criminal Appeals Legal Clinic, and I am representing the appellant, Ronald Boyer, in this matter. At this time, I would like to reserve two to three minutes for rebuttal, please. Absolutely. Your Honors, there is one issue in this case, and that is that the state failed to prove Mr. Boyer guilty beyond a reasonable doubt of constructively possessing weapons found in an apartment that was not Mr. Boyer's domicile. After hearing the evidence of this case, no rational trier fact could have found that the state proved every essential element of the crime charged. The state had the burden of showing knowing possession through either actual possession or constructive possession. In this case, actual possession was not an issue because the weapons were not found on Mr. Boyer's person, and there is no evidence presented that the weapons were physically possessed by Boyer. Therefore, the state had to show constructive possession, which it failed to do so. First, Mr. Boyer was not a resident of Ms. Rush's apartment for several reasons. First, Mr. Boyer's identification card indicated a different address as his residence. Second, Ms. Rush's buzzer to the apartment indicated only one name on that buzzer, and that was her own, not Mr. Boyer's. Third, there was no evidence presented that Mr. Boyer kept clothing in the apartment or that there were pictures of him throughout the residence. Fourth, the only physical documents linking Mr. Boyer to the residence were two paid gas bills from three years prior to the execution of the search warrant. And finally, and most importantly, the trial judge himself found that Mr. Boyer was not a resident of Ms. Rush's apartment. It's important to note that Mr. Boyer was charged with and acquitted of possession of methamphetamine, which was found in the bedroom that he was asleep in when police entered the residence. The trial judge, in his decision to acquit Mr. Boyer of this charge, found that there was not sufficient evidence to show that Mr. Boyer was a resident, and therefore that the state failed to prove constructive possession over the drugs themselves. Now, despite the lack of ties to the residence and the lack of physical ties to the weapons themselves, the trial judge convicted Mr. Boyer of this weapons charge based off of the credibility contest. The trial judge, in his decision, relied on Officer Podolsky's testimony of an alleged unrecorded confession. When examining this alleged unrecorded confession closer, it's not reliable for several reasons. First, officers executing the search warrant were not wearing police cameras on their persons, and they could have. And because they weren't wearing these body cameras, they did not record this confession through audio and video recording. And secondly, officers nearby testified to either not hearing Mr. Boyer make these statements or didn't testify at all in regards to this confession. Firstly, Officer Kozlowski testified that he was 10 to 12 feet away from Officer Podolsky and Mr. Boyer at the time he was searching under the floorboards. Officer Podolsky stated that Mr. Boyer began making these incriminating statements when Officer Kozlowski was beginning to search the area of the floorboards. And Officer Kozlowski testified on cross-examination that he did not hear Mr. Boyer make any statements at all while being just 10 to 12 feet away. In addition to this, Officer Brown testified at trial and he was in the presence of Officer Podolsky and Mr. Boyer when Mr. Boyer was Mirandized and was allegedly making these statements. Officer Brown didn't give any testimony in regards to this alleged confession. And finally, Sergeant Boyle was also present when Mr. Boyer was Mirandized and allegedly making these incriminating statements and he didn't testify at all at trial. Based on the facts of this case, there is reasonable doubt as to whether Mr. Boyer is guilty of unlawful use or possession of a weapon by a felon. We therefore ask that this court reverse Mr. Boyer's conviction. I will now take questions. Thank you, Ms. Ballou. Justice Burke, do you have any questions? Yes. Good morning, Ms. Ballou. How are you today? I'm well. How are you? Good. You're getting your first argument out of the way, so good for you. So a lot of your argument seems to focus on the fact that the officers should not have been believed. Correct? That's correct. Isn't it solely within the province of the trial court to say who is credible and who is not credible because they have the ability to assess people as they're testifying, which we do not have? It is, but based off of the facts of this case, there's reasonable doubt as to whether Boyer even made these statements. I mean, officers nearby testified to not hearing these statements, and these statements were not recorded when they could have been. The trial judge also heard that, though, didn't they, that the other officers didn't hear that confession? The trial judge heard Officer Kozlowski testify to not hearing anything. Yes. And so the trial judge made the assessment that he found that believable in spite of the other officers not hearing it, right? In the trial judge's assessment, he really only spoke about Officer Podolski's testimony. He didn't bring up Officer Kozlowski's testimony of not hearing the confession being made. His analysis was mainly just in regards to what Officer Podolski said. And one other thing, the standard of review on this one's pretty high, isn't it? And isn't it if any person could have possibly found the way the trial judge found, then we have to affirm. Is that correct? Yes. Any rational trier of fact. So you're saying that there's absolutely no possibility that anybody who had a working brain could have found this way? Yes, that's correct. Okay. Thank you, Ms. Ballou. No other questions. Thank you, Justice. Justice McBride, do you have any questions? I have a few. Good morning, Ms. Ballou. Welcome to the appellate court. Going to the rational trier of fact, are we looking at more specifically any rational trier of fact, or are we actually looking at the judge's findings? So we're looking at any rational trier of fact. All right. So we don't really have to follow the judge's findings. We're trying to determine whether any rational trier of fact could have found the elements of the offense. That's correct. All right. Here, you've talked about he didn't reside there. And in fact, the judge kind of said that he didn't find that this person was living there. Is residency required? Is that an element, or is that something that helps prove a case, but it's not a mandatory element of the charge? Residency isn't necessarily a requirement, but it is a large factor that plays into showing constructive possession. And we saw this in both Terrell and Fernandez, where the trial judges examined the various connections of those defendants in those respective cases. And because there was no sufficient evidence establishing residency, the trial judge didn't find constructive possession in those respective cases. Well, the state distinguishes both of them, first by saying neither one involved a statement. And secondly, I think in one of the cases, the defendant was arrested outside the apartment and someone else was inside at the time. Is that correct? That is correct, that both cases didn't involve a statement. But the case that the state cites, the statement in question was not contested. So that's the difference between those two. And how do you respond to the argument that you're basically asking us to reweigh the evidence, which we can't do? I would argue that I'm not asking that this court reweigh the evidence, but just viewing the evidence presented in the record, there is evidence showing that there is reasonable doubt as to whether Mr. Boyer is guilty of this crime. Was Officer Brown asked about whether he heard the statement or was that the other officer who was cross-examined and said he didn't hear anything? Officer Brown was not questioned about this statement, and Officer Kozlowski was the one cross-examined on whether or not he heard the statements, which he didn't. All right. And you would agree that there was some testimony about floorboards and how they looked different. Yes, Officer Kozlowski testified that there was discoloration of the floorboards which led him to look at them. But in this case, the state didn't present any photographs or anything else to even corroborate that these floorboards were different. Is that true? To my knowledge, I don't believe they did. Well, that sort of helps you, doesn't it? They didn't bring in the physical gun. Apparently, the apartment was totally destroyed and there wasn't any physical evidence that was introduced to connect him, other than the gas bills or something. Is that correct? Yes, the only ties tying him to the residence were the gas bills, and those were three years prior. All right. Well, that's all I have at this time. Thank you. Thank you. Justice House? This conviction is not really based on residency. Let me check my connection here. Okay, am I here? Can you hear me? Okay. This case was not really based on the fact that the defendant resided on the premises, but the evidence supporting his conviction for the weapons was based primarily on his statement. Is that correct? Yes, this case really boils down to the credibility and reliability of whether or not Mr. Boyer made these statements. Well, touching on my colleague's questions earlier, the judge heard the testimony. He heard these witnesses testify. He heard the one officer testify that he heard directly the defendant make the admission. There are two other officers present. They were not asked about whether or not such statements were made, but the judge heard all of this. He observed how they testified. He observed the manner of testifying, and he made a decision. He said, the officer is telling the truth and the defendant is not. How would you write this case up for us, saying that the court's decision was so far out of whack as to be unsatisfactory? What would you write to tell us to say that? In my view, the reasonable doubt comes in to the officers nearby didn't hear these statements. Other officers could have testified to the substance of the confession because they were allegedly nearby when these were made and didn't. The substance of the confessions themselves were questionable in that the officer Podolsky testified that Mr. Boyer stated that the weapons were where they were for his son's protection, but the state didn't present evidence showing that children resided in the residence. Mr. Boyer stated that his son is his son's mother was not Mrs. Rush and that there was children's clothing in the premises. It was testimony. There was children's clothing present, right? There was children's clothing, but the officer could not testify whether they were boys clothing or girls clothing. It was not specific at all. Just because of this, the officer's testimony of this alleged confession is just not reliable. All right, well, thank you. Does anyone else have any questions before we move on? Mr. Greenspan, you may proceed when you're ready. Thank you, Your Honor. Council justices may please the court. Once again, my name is David Greenspan, and I am an assistant state's attorney representing the people of the state of Illinois for Cook County. As we've discussed already in this case, this is a question about constructive possession, and we're looking at that in the context of the sufficiency of the evidence. There's no question in this case regarding the felony status of the defendant here that prior conviction was stipulated to at trial. So the only thing that we're looking at here is whether or not the people proved constructive possession beyond a reasonable doubt. First, I want to address very plainly that residency is not a requirement for constructive possession. As this court has held in cases previously, and as we've cited in our briefing, the issue is not the relationship to the place in which contraband is found. The relationship to the contraband itself is what is at issue. Residency is one factor that the trier effect may consider, but it is not determinative. Again, the issue is what was the relationship between the defendant and the contraband itself. In order to prove that, the state must show that the defendant had dominion and control over the contraband itself, and that dominion and control is generally proven by way of circumstantial evidence. And where there is circumstantial evidence that a defendant knew of contraband, knew of its location, and intended to exercise control of it at some point in the foreseeable future, then dominion may also be inferred, even if present dominion is not currently established. And so in this case, as we've also discussed, there was a statement given by this defendant to Officer Podowski. In fact, there were two separate statements given by this defendant to Officer Podowski. The first one in which he admitted to knowledge of the firearms in their location where they were discovered later by Officer Kozlowski. And the defendant then provided a separate statement after being Mirandized as to why he had those firearms located where they were. The first being that he had the guns because they were for his own protection, and the second being that they had been placed under the floorboards because he was concerned about his son having access to the firearms. And I want to draw just briefly on a statement that counsel gave a moment ago regarding no evidence of children in the apartment. This is not relevant to the issue here. The defendant here is claiming that he was not a resident of the apartment, and the people are not disputing that the defendant was not a resident of the apartment. However, the evidence clearly shows that the defendant was present inside the apartment when the search warrant was executed. He had keys to the apartment on his person, in his pants, and admitted to being given access to the apartment by the resident of the apartment. He was found inside the apartment in a bed with virtually no clothing on. He clearly had familiarity with the interior of the apartment. There were the billing statements that were found by police addressed to him at that apartment. And there were a number of other items located that tied the defendant to this apartment. However, none of that really matters here because the issue is whether or not the defendant knew about the guns and had any intent to exercise dominion and control over them. And his statements very clearly established that. He knew that there were two guns. They found two guns. He told the officers after being Mirandized that he had the guns for his own personal protection because it was a bad neighborhood and he had been shot before. And the guns were hidden because he was concerned about children having access to them. Now, regarding this statement, and I'll try to be brief here, the defendant is arguing that the statement itself is unreliable and should be disregarded simply by virtue of the fact that it was not recorded and that there was no testimony from other officers regarding whether they heard this confession or not. And I'd like to be clear that Illinois case law is very clear on the point that the testimony of a single officer is sufficient to convict beyond a reasonable doubt whether or not that statement or the officer's testimony was corroborated by other officers simply goes to the weight, not the admissibility of that evidence. And the defendant here is not challenging the admissibility of Officer Podolsky's testimony. The defendant is instead challenging the weight of the testimony. And as this court pointed out previously, it is the trier of facts responsibility to determine the weight and draw all reasonable inferences from the testimony given by the witnesses at trial. Absent manifest, absent evidence that goes against the manifest weight of those findings. It is not for the reviewing court to overturn the trier of facts determinations. Here we had two statements given, one of which was given after being Mirandized. There is no evidence on the record that directly contradicts or undermines that confession as given to Officer Podolsky, whether or not the other officers heard that confession is immaterial again to the admissibility, and it is up to the court to determine whether or not it believed Officer Podolsky. Defendant here is not claiming that he made the statement involuntarily. Instead, he is simply denying that the statement was ever made. Essentially, the defense argument here is that the officer's testimony is not credible because he disagrees with it. And that is simply not enough on its face to overturn the determination of the trial court here. The trial court had the sole authority to make those determinations based upon the substance of the testimony and the conduct and demeanor of the witnesses at trial. The trial court determined in this case that it believed Officer Podolsky to be more credible than the defendant himself. And for those reasons, the people would respectfully ask this court to affirm the defendant's convictions for unlawful use of a weapon possession by a felon. Thank you. Thank you very much. Justice Justice Burke. No questions. No questions. Thank you. Justice McBride, do you have questions. I do. Mr Greenspan, this statement, wouldn't you say is critical to the state's case. Yes, Your Honor, the statement is perhaps the most critical piece of evidence in this case. But one of the officers said he didn't even hear it. Isn't that a little bit odd. No, Your Honor. If you recall the testimony of Officer Kozlowski, he did state that he was approximately 10 to 12 feet away from Officer Podolsky when the defendant made his statement. But at the time when the statement was made, Officer Kozlowski was actively attempting to remove the floorboards from the board in order to find the weapons. While executing a search warrant. It is entirely plausible that the officer was simply distracted by what he was doing at the time and did not hear the statement because he was focused on what was directly in front of him. In regards to Officer Brown simply wasn't asked. We have no testimony one way or the other about what he heard and so we cannot consider that in part of this argument. Well, let me ask you this. What case would you say is perhaps the best support for this case where you have a judge finding no residency, and you've got contraband that's actually hidden in a floor. What case do you think supports this? I mean you have this statement that one officer says he heard and the other says he didn't hear. But let's just assume you, you know, putting that a bit to the side. Are you, what case could you give us that you think supports this where you have a finding that he really wasn't residing there, and that he has dominion and control over something hidden in floorboards. Your Honor in our brief we cited to the case of the people versus Spencer, which I believe is a 2015 case that was decided in this court. And, or excuse me 2012 case, I correct myself in people versus Spencer. We had a similar situation here. We had a defendant where there was contraband located, including ammunition and firearms. The defendant in that case made two separate incriminating statements to the police officers while they were executing the search warrant. The first being that the officers would only find money during the search, but when the officers found ammunition, defendant made a second statement saying that he actually had The firearm that they discovered later because of the amount of money that he had in the apartment. And where was that gun. Where was that gun found in that case. It was found in a kitchen cabinet. It was not in plain sight, much like the immediate case and also like the immediate case, the defendant in Spencer made those statements to the officer the statements were not recorded. But he did make the confession of ownership again saying that he needed the weapons for personal protection and this court found those statements sufficient to find defendant guilty beyond a reasonable doubt and affirms the trial court in that matter. Well, don't the police routinely go into cabinets and things of that sort. But I don't know too many cases where they're tearing up floorboards. But your honor. If I may clarify, in this immediate case, the officers were there to execute a search warrant. I understand. And the scope of the search warrant in this particular case was to search the entire apartment for any evidence of contraband relating to these drugs. During the course of that search officer because Lasky noticed floorboards that appeared to be mismatched compared to the other floorboards that raised a suspicion in his mind in the mind of the other officers there. They believed that the floorboards would lead to a hidden compartment where contraband would be found and went to investigate in the course of executing that search warrant. Now, the fact that they found contraband unrelated to drugs in the search of the compartment is not itself relevant to the analysis here. The officers were executing a legal search warrant and the defendant is not arguing the legality of that search warrant or that the officers exceeded the scope of that warrant. And so in this particular instance, what they actually found versus what they were searching for is not relevant to the analysis. Right. That's all I have. Thank you, Your Honor. All right. I have no questions. Thank you. Miss Blue, you may proceed with your rebuttal, short rebuttal. Yes, just briefly. Spencer is distinguishable from this case for several reasons. First, the defendant was found to be a resident of the home. His ID card showed that the same address that of the residence that was searched. His clothing was present in the bedroom. There were pictures of him throughout the residence. There was mail addressed to him from just 10 days prior to the execution of the search warrant. And the manner in which the contraband was found was distinguishable as well. While the weapon itself was found in a cabinet, officers found ammunition in the defendant's bedroom. And the firearms found were easily accessible, especially compared to this case where the weapons were found for under floorboards, which Officer Kozlowski needed to use a knife in order to pry open. He was not able to do so with his hands. And finally, just very briefly, again, the confession was not recorded. Other officers nearby did not testify to hearing this confession. And because of this, we ask that this court reverse Mr. Boyer's conviction. Thank you. Thank you. Any questions based on what we just heard? If not, okay. We want to thank you again for your participation in this case. I think both parties did very well, argued very well. The briefs were well done. The case will be taken under advisement and we will issue a decision in due course. Thank you very much and have a great day.